# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

v.

VICTOR SAWYERS,

    Defendant.

NO. 1:19-CR-052

(JUDGE CAPUTO)

## MEMORANDUM

Presently before me is Defendant Victor Sawyers' ("Sawyers" or "Defendant") Motion for a *Franks* Hearing and to Suppress All Physical Evidence and Statements Pursuant to Fed. R. Crim. P. 12(b)(3) and the Fourth Amendment. (Doc. 39). In the alternative, Defendant requests disclosure of the name of the confidential informant. In support of this motion, Defendant argues the search warrant lacked probable cause because the Affidavit of Probable Cause submitted in support of the warrant application contained misrepresentations and omissions that were made either intentionally or with reckless disregard. For the reasons discussed below, the suppression motion and request for a *Franks* hearing will be denied and the request to disclose the name of the informant will be granted.

### I. Background

On January 30, 2019, a federal grand jury returned a six-count Indictment charging Sawyers and Antiqua Cox ("Cox") with possession with the intent to distribute heroin, cocaine base, and fentanyl and conspiracy for the same, maintaining a drug premises, and several firearm offenses. Specifically, Sawyers was charged with the following: Conspiracy to Possess with the Intent to Distribute Heroin, Cocaine Base and Fentanyl in violation of 21 U.S.C. § 846 (Count One); Possession with the Intent to Distribute Heroin, Cocaine Base, and Fentanyl in violation of 21 U.S.C. § 841(a)(1) (Count Two); Maintaining a Drug Premises in violation of 21 U.S.C. §

856(a)(1) (Count Three); Possession of a Firearm in Furtherance of Drug Trafficking in violation of 18 U.S.C. § 924(c) (Count Five); and Felon in Possession of a Firearm in violation of 18 U.S.C. § 922g) (Count Six). (Doc. 1).

On May 16, 2018, Detective Nicholas Ishman applied for a search warrant for 10 H Hall Manor, Harrisburg, Pennsylvania, 17104, which was approved by a magistrate judge that same day. (Doc. 39-1, "Def.'s Ex. A," at 2; Doc. 51, "Gov.'s Ex. 4," at 12). In support of the warrant application, Detective Ishman prepared an Affidavit of Probable Cause describing his investigation based on a tip from a confidential informant and subsequent controlled drug purchase also involving the informant. (*Id.*). The Affidavit of Probable Cause reads in pertinent part[1] as follows:

> Within the last two days, the Affiant [Detective Ishman] has been informed by a Confidential Informant (CI) that there was to be a male with the nickname of "Menace" selling drugs from 10 H Hall Manor, Harrisburg PA, 17104. Menace was identified as Victor Sawyers (11/10/1979). The CI did agree to go to 10 H Hall Manor, and while under police surveillance, make a controlled purchase of crack cocaine from this residence.
>
> While in my presence the CI did dial the number 717-303-4945 and ordered an amount of crack cocaine. The CI was told to come to the prearranged meeting spot of 10 H Hall Manor. I searched the CI and the CI's vehicle and found them free of any drugs, drug paraphernalia or money. I then documented Dauphin County Funds to be used during this transaction (Serial Numbers JA02286922B, MG88866042F, MB88645601G, MD51990904D, MB4427476511, JJ08595396B, MK84704165B) and provided these funds to the CI. Sgt. Delon Henry did mobilize to the area to cover the rear of the residence. Det. Jason Paul and I did mobilize to the area to cover the rear of the residence. The CI was followed to the area by Det. Dennis Simmons. While under full police surveillance, the CI exited their vehicle and walked directly to the front door of 10 H Hall Manor. The CI entered the residence and within 1-2 minutes exited the residence. The CI reentered their vehicle and drove from the area while under the surveillance of Det. Simmons. The CI returned to a secluded area where they provided Det. Simmons with a corner tie of suspected crack cocaine. Affiant searched the CI and Det. Simmons searched the CI's vehicle finding them free of any drugs, drug paraphernalia or money.

---

[1] The only portion of the affidavit not excerpted is the first paragraph, which details Detective Ishman's placement at the time and his relevant prior law enforcement experience. (Def.'s Ex. A at 2).

> It is the Affiant's experience that person(s) who sell illegal drugs often keep additional amounts of illegal drugs in their residences. For this reason Affiant is requesting a Search Warrant for 10 H Hall Manor, Harrisburg PA, 17104 and the curtilage around the residence to search for crack cocaine, drug paraphernalia including sandwich bags, drug proceeds including the previously stated prerecorded Dauphin County Funds, cell phone with the number 717-303-4945 and photos/documentation of residential occupancy.
>
> Affiant is requesting the Search Warrant be sealed for 60 days to protect the identity of the Confidential Informant. The Confidential informant is involved in other narcotics investigations.

(Def. Ex. A at 2).

Detective Ishman also prepared an Initial Crime Report detailing the arrangement and execution of a controlled drug purchase on May 14, 2018.[2] (*See* Doc. 39-2, "Def.'s Ex. B," *generally*). On May 18, 2018, officers executed the search warrant and seized a firearm, two magazines, a sandwich bag with suspected cocaine, a corner tie of suspected cocaine, sandwich bags with suspected heroin, two boxes of sandwich bags, a box of latex gloves, "letters w/ Victor Sawyers[,]" a bag with a spoon and plastic cup, a bottle of caffeine, a safe with ammunition and holsters, a box of glassine bags, three blenders, and one phone with the assigned phone number 717-303-4945. (Doc. 39-6, "Def.'s Ex. F," at 2). Sawyers and Cox were subsequently arrested and charged with the above-mentioned offenses.

On May 6, 2019, Sawyers filed the instant Motion for a *Franks* Hearing and to Suppress All Physical Evidence and Statements in connection with Rule 12(b)(3) of the Federal Rules of Criminal Procedure and the Fourth Amendment, or for disclosure of the name of the confidential informant in the alternative. (Doc. 39). The motion has been fully briefed and is ripe for review.

---

[2] The report appears to detail the same controlled drug purchase as the Affidavit of Probable Cause; however, the Affidavit of Probable Cause does not state the date(s) on which these events took place.

## II. Legal Standard

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The issuing judge must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317 (1983). A court reviewing a determination of probable cause may look only to whether "the magistrate had a substantial basis for concluding that probable cause existed." *Id.* When called upon to evaluate the supporting affidavit to a search warrant, a court must view it "in a common sense and nontechnical manner"—focusing "on what the affidavit includes, rather than on what it does not include." *United States v. Williams*, 124 F.3d 411, 420 (3d Cir. 1997) (citing *United States v. Conley*, 4 F.3d 1200, 1206, 1208 (3d Cir. 1993)).

Because there is a general presumption that an affidavit of probable cause is valid, a defendant must make "a 'substantial preliminary showing' that the affidavit contained a false statement, which was made knowingly or with reckless disregard for the truth, which is material to the finding of probable cause" to justify an evidentiary hearing on the validity of the affidavit. *United States v. Yusuf*, 461 F.3d 374, 383 (3d Cir. 2006) (quoting *Franks v. Delaware*, 438 U.S. 154, 171, 98 S. Ct. 2674 (1978)). Reckless disregard for the truth includes omissions where "an officer recklessly omits facts that any reasonable person would want to know . . . [or] has obvious reasons to doubt the truth of what he or she is asserting." *Id.* at 383 (quoting *Wilson v. Russo*, 212 F.3d 781, 783 (3d Cir. 2000)). The mere existence of such an omission is not dispositive, however. The reviewing court must insert the relevant facts and determine whether probable cause would have existed if the omission had not been made. *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000); *see also United States v. Frost*, 999 F.2d 737, 743 (3d Cir. 1993) ("[A] a defendant must show . . . that there would have been no probable cause but for the incorrect statement."). If probable cause is then found

4

lacking, a probable cause hearing, known as a "*Franks* hearing[,]" will be held. *Franks*, 438 U.S. at 156, 98 S. Ct. 2674.

## III. Discussion

Defendant challenges the validity of the search warrant, claiming Detective Ishman omitted or misrepresented material facts from the Affidavit of Probable Cause. In particular, Defendant asserts Detective Ishman omitted the date and time of the phone call and subsequent controlled drug purchase, the fact that 10 H Hall Manor was not Defendant's home address, and misleadingly implied Defendant participated in the actual drug sale.[3] Defendant also alleges Detective Ishman failed to establish the informant's reliability in the Affidavit of Probable Cause.

Because I find Defendant lacks standing under the Fourth Amendment to challenge the validity of the search warrant and suppress the physical evidence obtained as a result, I need not address the alleged factual misrepresentations and omissions to determine whether a *Franks* hearing should be held. "The 'standing' inquiry, in the Fourth Amendment context, is shorthand for the determination of whether a litigant's Fourth Amendment rights have been implicated." *United States v. Stearn*, 597 F.3d 540, 551 (3d Cir. 2010). "To invoke the Fourth Amendment's exclusionary rule, a defendant must demonstrate that his own Fourth Amendment rights were violated by the challenged search or seizure." *Id.* "Because Fourth Amendment rights are 'personal,' the proponent of a motion to suppress 'bears the burden of proving not only that the search . . . was illegal, but also that he had a legitimate expectation of privacy in the place searched." *Id.* (quoting *Rawlings v.*

---

[3] Defendant does not argue that any particular statement misrepresents the facts. Instead, he argues the Affidavit of Probable Cause as a whole implies, either deliberately or with reckless disregard, that Defendant participated in the controlled sale. I understand Defendant's position to be that if the omitted facts were included, the Affidavit of Probable Cause would no longer imply he participated in the sale, or would at least minimize the strength of such an inference.

5

*Kentucky*, 448 U.S. 98, 104, 100 S. Ct. 2556 (1980)). "Significantly, a defendant's Fourth Amendment rights are not violated by the introduction of evidence obtained in violation of a third party's rights." *Id.*

"An individual's expectation of privacy is legitimate if: (1) the individual demonstrated a subjective expectation of privacy in the subject of the search and (2) this expectation of privacy is objectively reasonable." *United States v. Cortez-Dutrieville*, 743 F.3d 881, 884 (3d Cir. 2014) (internal citations omitted). "The subjective prong requires a court to determine whether the defendant, 'by his conduct, has exhibited an actual expectation of privacy.'" *Id.* (quoting *Bond v. United States*, 529 U.S. 334, 338, 120 S. Ct. 1462 (2000)). "The objective prong requires a court to determine whether the defendant's expectation of privacy is 'one that society is prepared to recognize as reasonable.'" *Id.*

The only connection between Defendant and 10 H Hall Manor reflected in the Affidavit of Probable Cause is that the informant tipped the police that Defendant, identified by his nickname "Menace," sold drugs from that address. (Def. Ex. A at 2). While the Affidavit of Probable Cause describes 10 H Hall Manor as a "residence," Defendant is not identified as residing there. Indeed, Defendant argues 10 H Hall Manor was not his residence but was instead Cox's residence and also that he did not participate in the controlled purchase.[4] (Doc. 39-3, "Def.'s Ex. C"; Doc. 39-4, "Def.'s Ex. D"; Doc. 39-5, "Def.'s Ex. E"). Defendant has neither argued nor submitted evidence showing he was either an overnight house guest or that he was even present at the time of the search. *See Minnesota v. Olson*, 495 U.S. 91, 98-99, 110 S. Ct. 1684

---

[4] Specifically, Defendant argues that contrary to what is implied in the Affidavit of Probable Cause and Initial Crime Report, he could not have been on the phone call setting up the transaction at 11:30 a.m. on May 14, 2018 because he was attending a reentry class with the GEO Reentry Services as part of a condition on his parole. (Def.'s Ex. C, Def.'s Ex. D, Def.'s Ex. E). As such, Defendant argues, the individual on the other side of the phone call with the CI who stated he "would be home soon and to come through" could not have been Defendant. (Def.'s Ex. B at 4).

(1990) (recognizing overnight guests may have a legitimate expectation of privacy in a third party's residence); *Rakas v. Illinois*, 439 U.S. 128, 134, 99 S. Ct. 421 (1978) ("A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed."); *United States v. Rose*, 613 F. App'x 125, 128-30 (3d Cir. 2015) (determining defendant, who was not an overnight guest, did not have standing to seek suppression of the fruits of a search of another individual's residence); *United States v. Perez*, 280 F.3d 318, 337 ("[P]ersons in another's apartment for a short time for the business of packaging cocaine had no legitimate expectation of privacy in that apartment.") (citing *Minnesota v. Carter*, 525 U.S. 83, 91, 119 S. Ct. 469 (1998). Accordingly, Defendant has not shown he had a legitimate expectation of privacy in 10 H Hall Manor. Defendant's suppression motion and request for a *Franks* hearing will therefore be denied for lack of Fourth Amendment standing.

Defendant has also moved for disclosure of the name of the informant, arguing the informant will provide "exculpatory and necessary" information for both the suppression issue and the ultimate question of Defendant's guilt or innocence. (Doc. 39 ¶ 45). The government maintains a privilege to withhold the identity of a person who furnishes information to law enforcement concerning violations of the law. *Roviaro v. United States*, 353 U.S. 53, 59, 77 S. Ct. 623 (1957). No fixed rule exists for determining when disclosure of the identity of a confidential informant is justifiable. Instead, courts must "balanc[e] the public interest in protecting the flow of information against the individual's right to prepare his defense[,]" considering the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.* at 62. However, the Third Circuit has determined an informant's identity should be disclosed where: "(1) the possible testimony was highly relevant; (2) it might have disclosed an entrapment; (3) it might have thrown doubt upon the

defendant's identity; and (4) the informer was the sole participant other than the accused, in the transaction charged." *Id.* at 198-99 (citing *McCray v. Illinois*, 386 U.S. 300, 310-11, 87 S. Ct. 1056 (1967); *Roviaro*, 353 U.S. at 63-65, 77 S. Ct. 623).

According to the Third Circuit, "three types of cases may emerge" in such disclosure scenarios. *United States v. Jiles*, 658 F.2d 194, 196 (3d Cir. 1981).

> First, the court may be presented with an extreme situation . . . in which the informant played an active and crucial role in the events underlying the defendant's potential criminal liability. In these cases, disclosure and production of the informant will in all likelihood be required to ensure a fair trial. At the other end of the spectrum, are the cases in which the informant was not an active participant or eyewitness, but rather a mere tipster. In such cases, courts have generally held that the informant's identity need not be disclosed. A third group of cases falls between these two extremes and it is in this group that the balancing becomes most difficult.

*Id.* at 196-97 (internal citations omitted). Before determining which type of confidential informant is at issue in the case, courts must first "ascertain what need, if any, the defendant has alleged for disclosure." *Jiles*, 658 F.2d at 197 (citations omitted).

Here, Defendant alleges the informant will confirm both that he did not speak to Defendant on the phone call setting up the controlled purchase and that he did not buy drugs from Defendant at 10 H Hall Manor "within the two days prior [to] the detective submitting the Affidavit and application for the warrant to search." (Doc. 39 ¶ 46). This argument is not based on "mere speculation" but is instead supported by evidence. *See Jiles*, 658 F.2d at 197 ("The mere speculation that an eyewitness may have some evidence helpful to defendant's case is not sufficient to show the specific need required by *Roviaro*."); *United States v. Noble*, No. 1:17cr00005, 2018 WL 4501075, at * 2 (W.D. Pa. Sept. 20, 2018) ("Rather, the defendant must 'indicate some concrete circumstances that might justify overcoming both the public interest in encouraging the flow of information and the informant's private interest in his own safety.'") (quoting *United States v. Collins*, No. 2:09cr105, 2013 WL 12202655, at *2 (W.D. Pa. Apr. 9, 2013). As set forth in the Affidavit of Probable Cause, the informant

spoke to an individual, which the document implies but does not state was Defendant, and that the informant went into 10 H Hall Manor alone to execute the controlled purchase. Defendant has presented evidence that he may have been in another location, his reentry class, when some or all of these events occurred. (Def.'s Ex. C, Def.'s Ex. D, Def.'s Ex. E). The Affidavit of Probable Cause is unclear as to whether Detective Ishman actually listened in on the phone call, making the informant's testimony even more important if he was the only other party privy to the phone call. Thus, Defendant has shown a sufficient need for this information at trial: asserting his innocence "by throwing doubt upon the defendant's identity[,]" especially given that Detective Ishman may not have listened in on the phone call and the officers were not physically present in the house for the drug deal.

The Government's only argument opposing disclosure is that Defendant's request is "nothing more than a fishing expedition" to determine whether the Affidavit of Probable Cause contained any false or misleading statements. However, as mentioned above, Defendant requested disclosure of the name of the informant both for purposes of a *Franks* hearing and for establishing a defense at trial.[5] While disclosure for the purpose of a pretrial suppression hearing often weighs less favorably in balancing the competing interests under *Roviaro*, disclosure for the purpose of preparing a defense at trial weighs more favorably in a defendant's favor. *See Noble*, 2018 WL 4501075, at *2 ("Courts have also repeatedly emphasized that a defendant's need to learn the identity of an informant is less compelling in a pretrial suppression hearing than at trial."). As Defendant has submitted evidence to support his position that information from the informant could be used to establish his innocence, this need outweighs the government's interest in preventing a "fishing expedition" by the

---

[5] As Defendant lacks standing to challenge the validity of the search warrant, he would not be able to use information from the informant for purposes of *Franks* hearing or suppression. My discussion is therefore limited to Defendant's need for disclosure to prepare a defense at trial.

9

Defendant. *See United States v. Paschual-Pichardo*, No. 2011-001, 2014 WL 211406, at *4-*5 (D.V.I. Jan. 18, 2014) (granting motion to disclose the name of a confidential informant where the defendant presented evidence supporting his assertion that he may be able to assert an entrapment defense and that the informant may provide further information in support of that defense).

Moreover, this case is one in which the informant played an active role in the events underlying Defendant's potential criminal liability, even though the information obtained from the informant's tip, phone call, and controlled drug purchase was used for obtaining a search warrant. *See, e.g. United States v. Bazzano*, 712 F.2d 826, 828, 839 (3d Cir. 1983) (determining disclosure is not required "[w]here an informant's role was in validating a search" and the informant only provided a tip that was used for probable cause to obtain a search warrant); *United States v. Luiz Gonzales*, No. 3:CR-17-299, 2019 WL 2504082, at *3 (M.D. Pa. June 14, 2019) (denying disclosure of a confidential informant's identity because case was of the kind in which a "historical confidential informant was not an active participant or eyewitness") (internal quotation marks omitted); *United States v. Bazzle*, No. 11-74, 2012 WL 996501, at *6 (E.D. Pa. Mar. 23, 2012) ("Because this Court concludes that the CI acted more as a tipster who provided probable cause to arrest rather than as a direct participant in the crimes with which [defendant] is charged, [defendant] has failed to meet his burden to overcome the privilege."). Accordingly, Defendant's request for disclosure the name of the confidential informant will be granted.

### III.  Conclusion

For the above stated reasons, Defendant's Motion for a *Franks* Hearing and to Suppress All Physical Evidence and Statements Pursuant to Fed. R. Crim. P. 12(b)(3) and the Fourth Amendment is denied and Defendant's request for disclosure of the name of the confidential informant is granted.  An appropriate order follows.

August 14, 2019
Date

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge